## SETH BILLINGTON *versus* DENNIS SPRAGUE.

A memorandum made out of Court, of an agreement to refer an action by rule of Court, from which an entry to refer is afterwards put upon the docket but having no reference to the memorandum, is wholly superseded by such entry, and cannot affect the construction thereof.

Where for many years such has been the understanding of the term, the word, "*referred*," simply, entered upon the docket, imports that a rule of reference is to be made out in common form, with power to the referees, to decide, in case of necessity, by a majority, and to proceed upon hearing one party, if the other, being duly notified, shall fail to be present.

If in making out the rule, the clerk changes the order of the names as entered upon the docket, placing the last name first, it is an irregularity which might prevent the acceptance of the report, if objected to seasonably. But it may be waived, and it will be considered as waived by the parties, if knowing the fact, they proceed to the hearing without objection. It is too late in such case to make it, when the report is offered for acceptance.

If the referees, appointed by rule of Court, make their report, awarding a certain sum to the plaintiff as damages with costs of court to be taxed by the Court, but wholly omitting to state the amount of the costs of reference; and the plaintiff moves that the report be accepted; this omission will not furnish any valid objection, on the part of the defendant, to the acceptance of the report.

And if the reference has been entered into on the part of the defendant, not only by him, but also by his creditor, who had, by leave of Court, come in and given bond, under the provisions of the Rev. Stat. c. 115, the report will be accepted, notwithstanding the referees, after awarding damages and costs against the defendant of record, also add, and " do recover of the said L. (the creditor) such costs of reference and damages as he may be legally entitled to pay."

EXCEPTIONS from the Eastern District Court, ALLEN J. presiding.

This question came before the Court on the following objections to the acceptance of a report of referees, made in behalf of the defendant.

1. Because the rule was improvidently issued, and not according to the submission, which was to Jacob Hale, Calvin Copeland and Charles C. Cushman, and not to them or the major part of them, as appears by the docket of the Court. 2. Because the report is signed by but two of the referees, and they had not by the terms of the submission authority to act and decide in the premises. 3. Because by the agreement of the parties

Jacob Hale was appointed chairman of the referees, but by the rule of Court, C. C. Cushman was appointed chairman. 4. Because C. C. Cushman, not being chairman, acted as such. 5. Because the report is void for uncertainty; and not according to the submission; and because it is not final.

While the action was pending, an agreement was made, of which a copy follows: — "Dec. 31, 1841. It is agreed that the action pending in the D. Court, Penobscot County, *Seth Billington* v. *Dennis Sprague*, in which Asaph Leonard comes in under the statute for the benefit of subsequent attaching creditors and defends the action, by leave of Court, shall be referred at the next January Term to Jacob Hale, Calvin Copeland and Charles C. Cushman by rule of Court. Samuel McLellan, attorney for Asaph Leonard. Abner Knowles attorney to Billington."

Certain entries by the clerk on his court docket were referred to as part of the exceptions, and were as follows: —

"*Seth Billington* v. *Dennis Sprague*.

"October Term, D. C. 1840. Asaph Leonard has leave to come in and defend, and has filed his bond approved.

"January Term, 1842. Referred to Jacob Hale, Calvin Copeland and Charles C. Cushman."

The rule, made out by the clerk, on which the report was made, had Cushman's name as the first of the referees, instead of the last, as it was on the agreement; and concluded with: "The report of whom or a major part of whom, to be made as soon as may be; judgment thereon to be final; and if either party, on due notice, neglect to attend, the referees to proceed *ex parte*."

The referees made their report at the May Term, 1842. It was signed by two of the referees, and the third made a certificate that he was present at the hearing and adjudication, and that the report was presented to him for his signature, but that he declined signing it, because he differed in opinion. The report, after stating that they had "duly notified the parties therein named, as also Asaph Leonard, who was permitted by the Court to come in and defend as subsequent attaching

creditor, met them," &c., says, that the referees " do award and determine, and this is our final award and determination in the premises, that the said Seth Billington do recover of the said Dennis Sprague the sum of six hundred and four dollars and twenty-eight cents, debt or damage, and of the said Asaph Leonard such costs of reference and damages as he may be legally entitled to pay ; and costs of Court, to be taxed by said Court, of said Sprague. Given under our hands," &c.

The exceptions then set forth, that " it appeared in evidence that S. McLellan, counsel for both Leonard and the defendant, offered a rule similar to the one presented, except that C. C. Cushman's name was first ; that was noticed, but both were before the referees at the same time. J. B. Hill, Esq. counsel for the defendant, testified that he was not aware, at the hearing, of the error in the rule, and that if he had known it, he should have objected to the further hearing, which last evidence was objected to. C. C. Cushman, Esq. one of the referees, testified that no objection was made to the rule that was used, and that the reason of using it instead of the other was, because the parties were notified under it. The several objections of the defendant's counsel the presiding Judge overruled, and accepted the report.

" To the above ruling of the Court the defendant excepts, and prays that his exceptions may be allowed.

" By John Appleton, Attorney for Leonard."

At the June Term of this Court, 1842, the case was continued nisi to be argued in writing; and written arguments were afterwards furnished.

*John Appleton*, for the defendant.

By the agreement of the parties and by the entry on the docket this action is to be referred to three individuals named. The reference was not, nor was it intended to be a reference to three or a major part. This agreement is to be construed according to its legal effect.

A submission to arbitrators, is a delegation of power for a *mere private purpose ;* it is necessary that all should concur in the award, unless it is otherwise provided by the parties.

Thompson J. in *Greene* v. *Miller*, 6 Johns. R. 39, and cases cited.

Unless it be *expressly* provided in the submission, that a *less* number than all the arbitrators named may make the award, the concurrence of *all* is necessary ; &c. Kyd on Awards, 106 ; 1 Dall. R. 119, 293 ; 4 Watts, 75.

They would go too far were they to infer an authority not *intimated*, by any expression of the parties to their submission, to the three arbitrators, arising constructively by an unnecessary implication from the terms of the submission. *Towne* v. *Jaquith*, 6 Mass. R. 49.

The contract of submission is to govern and by that all three are to decide, not two.

The reference is to be " *by rule of Court.*" But the object of a rule of Court is only by the process of the Court to carry out more effectually the contract of the parties. It must correspond to that contract, from which alone it derives its existence. It cannot be altered, varied, or changed by the Court, or its officer. If legal, it is binding on all.

To change the agreement from a submission to three to a submission to three or the *major* part would be an alteration of the agreement. Had either of the parties interpolated " *or a major part,*" without the consent of the others, it would be a forgery. The clerk cannot do that, any more than a party. Being a contract binding on *both*, it can be altered in any *essential* part only by concurrence of both.

It was the duty of the Court to have carried into effect the agreement of the parties and to have made the rule conform to the *agreement* to refer which is the basis of all proceedings.

" When the *submission* is to three persons, an award made by *two* of the *three* is *bad* although in the rule issued by the prothonotary, two of them were authorized to make an award ; no such authority being contained in the submission." *Witty* v. *Tentman*, 4 Watts, 75.

Where an agreement to refer a suit appointed *three* persons as referees without giving authority to any *two* of them to report, and the clerk by mistake expressed the rule in *usual*

form, the Court set aside the report made by only *two* of the referees.   *Tetter* v. *Rapesnyder*, 1 Dallas, 293.

The Court on the authority of these cases should have set aside the award.

A rule agreed on by the parties cannot be enlarged by the Court without the parties' consent.   *Rice* v. *Clark*, 8 Vermont R. 104.

The award is void for uncertainty, and for not following the submission.

The reference was of *this* action, which was on three notes signed by defendant.

The award is, that Billington do recover of Sprague $604,28, damage, and of Asaph Leonard *such* costs *of reference and damages as he may be legally* entitled to pay, and costs of court to be taxed by the Court.   The plaintiff recovers of Sprague, $604,28, and costs of court; of Leonard *such costs of reference and damages* as he may be legally entitled to.

That the award is void for uncertainty, in reference to the costs of reference, and damages, is abundantly obvious, no costs of reference, *no* damages are fixed.   The whole is as indefinite as can be conceived.   Now such an award, one so vague and uncertain will never be supported.   No judgment can be rendered at present as two *items* are yet undetermined.

The report does not conform to the submission.

A report is bad which refers to the Court, what was referred to the referees.   *Kingston* v. *Kincaid*, 1 Wash. C. C. R. 448.

A report finding that the sum of £75 was due the 3d of March last was set aside for uncertainty.   *Young* v. *Rubens*, 1 Dal. 119.

An award to pay the costs of arbitration, without saying how much is to be paid, is void.   *Schuyler* v. *Vanderveer*, 2 Caines, 235.

An award to give *security* for certain sums is void for uncertainty.   3 S. & R. 340 ; 9 Johns R. 43.

As to awards void for uncertainty, see Caldwell on Arbitration, Am. Ed. 117, and seq. ; Kyd on Awards, 194.

The award then being uncertain, as to *costs* and *damages,* is void.

*Cutting,* for the plaintiff.

The defendant's counsel's first objection to the acceptance of the report is, because the rule was not made out by the clerk in conformity with the record. And this presents the question, whether or not, when an action is referred "by Rule of Court" to three individuals, the clerk is authorized to issue a rule authorizing the three or a major part of them to report.

That the clerk is so authorized, I infer from the invariable and uniform practice of all clerks so to issue rules, when a reference is to three, in this county, for the last twenty years; and the Court on inspection, will perceive in the copy of the rule annexed a blank space in which to insert "a major part."

But assuming, that such is not the fact, and that the defendant's objection is valid, what consequences hereafter are to follow? Most assuredly writs of error and a reversal of judgments in all such cases, and a glorious harvest for the profession. And the defendant's counsel at this late day shall have all the credit of having made the discovery, and of springing a trap upon the community and catching his own clients.

None of the authorities cited by defendant's counsel support his proposition; they refer to arbitration and arbitrators, and not to rules issued by Courts, or to statute references. Between the two classes of cases there is a broad distinction; by the former it may perhaps be said, that power is delegated, as the defendant's counsel has remarked, "for a mere private purpose," that the arbitrators receive their authority and jurisdiction solely from the agreement and assent of the parties, and that such authority and jurisdiction cannot be controlled by statute or the common law without affecting their free agency. But see American Common Law, 1 Vol. p. 465, and cases cited, viz. 1 McCord's S. C. R. 137. *Lockhart* v. *Kidd,* 2 Const. R. 217. Courts have no control over an arbitrament excepting incidentally, when the award is pleaded in bar. Otherwise with rules of Court and statute references, such being for the advancement of public justice. 1 Bos. & Pull. 239.

The authority of Courts to issue a rule is derived from the common law, and is not a statute regulation. The power of Courts over the report of referees entered into before a justice of the peace is conferred by statute ; and their power over both, when regularly before them, is precisely the same. The latter remedy differs only from the former, inasmuch as it dispenses with the necessity of suing out a writ and entering the same in order to give the Court jurisdiction.

So in England, until the statute 9 & 10 W. 3. c. 15, § 1, Courts had no authority to issue a rule except in cases depending in Court. "The intent of this act was to put submissions where no cause was depending in Court, upon the same footing with those, where the cause was depending, *and it is only declaratory of what the law was before in the latter case.*" 2 Petersdorff's Abr. 79 [110] Note.

Even so our own statute ; Rev. St. c. 138, is declaratory of what the law was before as to references entered *in actions* depending. See Sec. 8 " The referees, &c. shall have the same authority, as those appointed by a rule of said Court."

See Sec. 2, as to the substance of the prescribed agreement. " The report of whom (or a major part of whom,)" &c. The part embraced within the parenthesis to be inserted when the referees consist of any number more than one or two, as by this act the parties may submit their controversy to one or more referees. It is otherwise in the statute of 1821, c. 78, where the form prescribed is to three referees, in which case the paenthesis is omitted, but the words retained. The authority therefore given by statute to referees, is, that a majority may report, and consequently is "*the same authority*" referred to in Sec. 8.

But the defendant's counsel, as though aware of the fallacy of his proposition on general principles, attempts to support it by the introduction of the agreement to refer.

This paper was designed and had no other force and effect than to convey to the Court the assent of the parties to refer the action "*by rule of Court,*" and to authorize the clerk to make the entry in the absence of one or both of the attorneys.

The Court will notice the expression, "*by rule of Court*," which is general in terms and must mean such a rule as is issued in ordinary cases, which was the rule in fact issued; and which, as I have attempted to show, was in accordance with the principles of the common law and the uniform practice of our Courts.

But I consider this question settled in favor of the acceptance of the report on authority, in our own State. *Inhabitants of Cumberland* v. *Inhabitants of North Yarmouth*, 4 Greenl. 459. This case I consider to be precisely in point. I have stated that none of the authorities cited by defendant's counsel support his proposition. Perhaps I ought to except the case of *Tetter* v. *Rapesnyder*, 1 Dall. 293. This case I consider no authority; it was only the decision of an inferior Court, and whether an inferior Judge or not, we have no means of determining; excepting from the absurdity of the decision. Mr. Dallas, in 1788, must have been hard pushed for materials for his reports, when he was obliged to resort to the decisions of a Judge of the Court of Common Pleas; as also the defendant's counsel when he is compelled to resort to those decisions in support of his propositions. And besides we do not know whether references in Pennsylvania at that time were regulated by statute or the common law.

But I still have another and, as I apprehend, a full and complete answer to this proposition.

The evidence discloses that the tenor and terms of the rule, as issued by the clerk, was known to the counsel at the time of the reference. "*It appeared in evidence that S. McLellan Esq., counsel for both Leonard and the defendant, offered a rule similar to the one presented except,*" &c.

Now it cannot be argued very consistently, that McLellan, who was the principal counsel in the case and who signed the agreement to refer, should have taken out a rule and produced it before the referees, and at the same time was ignorant of its contents. Such a supposition would argue gross ignorance and carelessness on the part of counsel. Now I contend, indeed, I think I may assume, that under these circumstances,

after having proceeded to trial before the referees, without objection, and putting the plaintiff to the hazard of an unfavorable issue, that when he finds the report against him, it is too late to make his objection; it is unjust; yea, it is dishonorable. It is a kind of finesse not to be sanctioned in a court of justice; it is like a party, who, knowing of some legal objection to a juryman during the progress of a trial, but keeping it concealed until finding a verdict against him, and then comes in for the first time and moves the verdict to be set aside for that cause; or like a party who suffers a witness to be examined without objection, and then moves for a new trial, after having tried an experiment, in consequence of interest in the witness which he knew as well before as after the trial. *Fox* v. *Hazeltine*, 10 Pick. 275.

The next and only other objection made by the defendant's counsel to the acceptance of the report is, " that it is void for uncertainty."

So far as it regards Sprague, the defendant of record, and against whom we claim judgment for debt and costs of Court, I am unable to perceive any uncertainty. So far as it respects Leonard, in this suit we do not expect, neither can we in any event recover any thing, and we never claimed any thing, and that portion of the report which alludes to Leonard was intended to have relation hereafter to his bond; if by force of the statute the plaintiff should be entitled to recover any thing. Rev. St. c. 115, § 117.

Now if this " *defence had not been made*" by Leonard, what would have been the judgment against the defendant, Sprague? Certainly nothing more nor less than the debt and costs of Court, for Sprague had no concern with the reference; he was willing to be defaulted. Leonard caused the action to be referred; and the referees very properly, and in strict conformity with the statute, awarded debt and costs of Court against the defendant, Sprague.

By Sec. 115 of the same statute, it is provided, " If the Court shall admit the petitioner to defend against such prior suit, he shall give bond, or enter into recognizance with suffi-

cient surety, in such sum, as the Court shall order, to pay to the plaintiff in such previous suit, all such costs and damages, as the Court shall adjudge and decree to have been occasioned to the plaintiff, by such defence." Now, that part of the report respecting Leonard, viz. " *and of the said Asaph Leonard such costs of reference and damages as he may be legally entitled to pay*," is intended particularly for the consideration of the Court " in awarding execution on the recognizance," and to inform the Court that costs of reference was not included in the amount awarded against Sprague. And if the Court, when the subject matter of the recognizance comes properly before them, (which cannot be until after the termination of this suit,) should adjudge that the plaintiff was *legally entitled to recover the costs of reference* of Leonard, then the Court would probably give the plaintiff an execution for that sum to be taxed subject to their inspection and approval. *And the same consequences would have followed had the referees said nothing about Leonard and costs of reference,* and in this point of view, that part of the rule is immaterial. Mr. Appleton objected to the acceptance of the report as attorney for Leonard, and if that part of the report is void for uncertainty, why should Leonard complain? It cannot injure him by accepting the report as against Sprague, since the execution will issue only against Sprague.

The cases cited on this point have no relevancy to this case. They relate to parties of record.

But, " where part of the award was void for uncertainty, and is not so connected with the rest as to affect the justice of the case, the award is good for that part." 1 Wheeler's American Common Law, 450, citing *Martin* v. *Williams*, 13 Johns. R. 264, and *Adams* v. *Willoughby*, 6 Johns. R. 65 ; Kyd on Awards, 280 ; *Clement* v. *Durgin*, 1 Greenl. 300.

The opinion of the Court was drawn up by

WHITMAN C. J. — No doubt is entertained, that the powers delegated to arbitrators, and referees by rule of Court, depend alike in each case, upon the agreement of the parties thereto.

To establish such a position in the defence, the citation of authorities was a work of supererogation. The memorandum, however, from which the entry on the docket of the agreement to refer was made, and to which no reference is made in such entry, cannot be regarded as in anywise affecting the construction thereof.

A memorandum of an agreement, made out of Court, to refer, and subsequently carried into effect by an entry in Court, and under its sanction, on the docket, is thereby wholly superseded, as much so as if it had never existed. The question then depends upon the construction to be put upon the entry upon the docket. Such entries are always brief, and merely to indicate to the clerk, when about to make up an extended and permanent record, what is to be the scope and effect of it. Such abbreviated entries by long usage, become perfectly intelligible to the Court and the bar; as much so as LL. D. or S. T. D. *et cetera*, in a university catalogue.

In entering an agreement to refer upon the docket it almost never occurs, that the parties contemplate a reference otherwise than in the common form, viz. that if the referees cannot agree, after hearing the parties, a report made by the major part of them shall be final.

So generally has this been the case, that, formerly, some, if not all the clerks, while we were a part of Massachusetts, when they entered upon the docket "referred," added, " *common rule ex parte.*" This addition would be unintelligible to all such as were not conversant with such entries. A common rule was one in which it was agreed, that a majority should decide in case of necessity ; and *ex parte* meant, that the referees should proceed, if one of the parties, upon being duly notified should not appear.

For many years past, it is believed, the above addition to the entry of " *referred*" has been wholly omitted ; and the word referred has been considered as importing, without it, the same as it formerly did with it. If any thing different were intended the parties have been expected to specify it. This modern practice would seem to have obtained, in the county of Pe-

nobscot, from the time of its establishment; for this is asserted to be the case by the counsel for the plaintiff, and not controverted by the indefatigable counsel for the defendant. It is not to be questioned, therefore, that there has been a perfect understanding at the bar, when, "referred," simply, has been entered under an action, that it has been perfectly well understood to import a reference in the common form, viz. with power to the referees to decide, in case of necessity, by a majority, and to proceed upon hearing one party if the other, being duly notified, failed to be present. The report of the referees was therefore upon this ground unobjectionable.

It is further objected that in the rule issued by the clerk, the order of the names of the referees, as they stand upon the docket, is reversed, whereby the one on the docket, who, being first there named, would be expected to act as chairman, was superseded; and the last there named as a referee, substituted in his place. This was undoubtedly an irregularity on the part of the clerk; and we are by no means prepared to say, if it had not been acquiesced in at the hearing before the referees, that the report should not have been set aside for this cause. The parties have clearly a right to agree as to which of their referees shall act as chairman, and, not unfrequently, much importance is attached to such an incident. The first name in the order in which the names are introduced upon the docket, is considered as affording a designation of the one intended to act as chairman. But it is not apparent, that the irregularity complained of could be attended with much, if any detriment to the parties; and it would seem that it could not be otherwise than competent for them to waive any exception on account of it. Such waiver may be implied or express. At the hearing it could not have been unknown to them, who was acting as chairman, even if they can be believed to have been guilty of so great an oversight as not to have inspected the rule for the purpose; and knowing who acted as chairman, and going through the whole investigation without making any objection to the procedure, should certainly preclude the right to do so, when the result became known.

This objection, therefore, we do not consider as open to the defendant at the coming in of the report.

As to the exception, that the report is uncertain for want of an ascertainment of the costs of reference, as the plaintiff moves for the acceptance of the report, in whose favor, in case of acceptance, judgment is to be rendered for such costs as he may be entitled to ; and as no costs can be taxed for him, except such as may be ascertainable by the Court, according to the rules of law, it is not apparent why the defendants should, for the cause alleged, object to the acceptance of it. As to the costs, which Leonard would be bound to pay to the plaintiff, it is true, that the report of the referees contains no definite award ; and the subject does not seem to have been, and perhaps could not be embraced in the submission.

According to the requirement of the statute, with which it is to be presumed he had complied, he should have given bond, or have recognized, with sureties, to pay to the plaintiff all such costs and damages, *as the Court* should adjudge and decree to have been occasioned to the plaintiff by his defence. If it were competent to the parties to refer this question, by rule of court, it would not seem that they had done it. All that is embraced in the rule is the subject matter of the action pending between the original parties ; and this would seem to have been done with the concurrence of the principal defendant ; for in the exceptions, by the defendant's counsel, it appears that one of them, McLellan, appeared as well for the defendant as for Leonard.

The award therefore may be regarded as correct, and well made, independent of any adjudication as to what would concern Leonard and the plaintiff, and hence, if the latter is content with it, it is sufficiently certain.

The exceptions therefore are overruled, and the acceptance of the report is confirmed.