In these two actions a recovery is sought against the sureties on the official bonds; of J. H. Rowe, Jr., as municipal clerk of St. Marys, Ohio. There are three causes of action in the first above mentioned case, and seven in the other, the breach of the bond in each instance consisting in the embezzlement by Rowe of moneys which he had collected from property owners in payment of street assessments, which moneys he was authorized and directed to collect by various ordinances of the council of St. Marys. In case No. 7233 these ordinances were passed and took effect after the bond was given and accepted. In case No. 7234 they were passed and took effect before the bond was given and accepted.
A general demurrer was interposed to the petitions in both cases and the questions made thereon were, first, that the petitions failed to show that any demand for payment was made upon the sureties before the actions were commenced; and, second, that the alleged defaults of the defendant, Rowe, were not made in relation to his duties as clerk of the municipality, and consequently, as the bonds sued upon were given to secure the faithful performance of his duties as such clerk, no breach of the conditions thereof has been alleged, and therefore the petitions do not state a cause of action.
As to the first ground of demurrer in each cause the demurrer is overruled. The law in this particular is that the petition need not allege a demand on the principal for payment, nor a notice to the surety of the default of the principal, unless by the terms of the bond demand and notice are necessary to fix the liability of the surety (Bush v. Critchfield, 4 O., 103).
*647 On the second ground the demurrer is sustained in both cases. It is apparent from the petitions that in both cases the bonds were given to secure the faithful performance by Rowe of his duties as clerk, and as the sureties are entitled to stand upon the strict letter of the contract, they can not be held for Rowe’s malfeasance in any other particular than while he was acting as clerk of the municipality and in the discharge of the duties which pertain to the office of clerk. In 4 Am. & Eng. Ene. of Law, 2d Ed., 681, it is said that a bond conditioned for the performance of the duties of a public office generally, is construed so as to embrace all of the duties which by law are required of the office and such other duties as are reasonably incidental or necessary to be performed in order to give proper effect to the duties prescribed. And again, at page 684, it is said that separate duties, that is to say, duties pertaining to an office other than the office with reference to which a bond is specifically given, are not, of course, included in the condition of such bond unless the terms of the condition are sufficiently broad and general to admit of a different construction.
It is apparent from the statutes in force at the time Rowe was elected and his bond given, in both these causes, that the duties of the clerk were what the title imports — clerical; and that they did not include his acting as a fiscal agent any more than any other person. Indeed, it is not contended that the statutes imposed the duties upon Rowe in relation to which his default occurred, but that these duties were imposed by the various ordinances referred to in the petitions, and that the council not only had the authority to impose such duties upon Rowe (State v. Carter, 67 O. S., 422), but that by the express provision of Section 1738 (Bates Revised Statutes, Éd. 1900) the fact that new duties have been imposed upon a municipal officer are not available as a defense in a suit upon his official bond.
The question of subsequently imposed duties arises only in action No. 7233 — the bond in that case having been given and accepted prior to the passage of the ordinances imposing the duties in question upon Rowe. In the other action the bond *648 was given and accepted after the passage and taking effect of the ordinances. There is a long line of authorities which hold that unless the bond contains an express provision to the contrary, a surety, at the time of executing an official bond, is presumed to contemplate subsequent changes and additions in the duties of the office to which the bond relates which do not essentially change the nature and character of the office, and to contract with reference to such changes and additions (King et al v. Nichols, 16 O. S., 80; Dawson v. State, 38 O. S., 1). One of the leading cases in support of this proposition is People v. Vilas, 93 Am. Decns., 520; s. c., 36 N. Y., 459, cited by counsel for plaintiff. In this last mentioned case the court, in concluding its opinion, says that “a legislative alteration of the duties of an officer does not discharge his sureties so long as the duties remain appropriate to the office.” If the subsequently imposed duties are appropriate to the office it might be said that the surety contemplated such change when he signed the bond, and that consequently it is within the provision of his contract. But if the duties are not fairly appropriate to the office, then it can not be said that the surety contracted with reference to them, especially if they increased the risk which he has assumed, unless, of course, the words of the bond are broad enough to include them, or the law in force at the time of the contract plainly provides that such subsequently imposed duties shall be deemed within the terms of the undertaking.
It is true that Section 1738, ante, provides, in effect, that the imposition of new duties upon a municipal officer shall not operate to discharge the surety on his bond. But the duties there meant must be held to be duties that are pertinent and appropriate to the office in question, and not any or all duties which by law or ordinance a municipal officer may be called upon to perform. To hold otherwise would allow the statute to operate in many eases a fraudulent- trick upon the surety, and when a man became surety on the official bond of a municipal officer he would have no assurance, from the nature of the office and the conditions existing at the time, that he would not find himself liable for all sorts and conditions of debts and defaults, and, instead of knowing the character and extent of his lia *649 bility and thus being able to guard against a default (which is one of the objects aimed at in requiring bondsmen), would find himself, in order to be safe, practically the guardian of the officer whose surety he had become. It might be argued that this effect would be a consummation “devoutly to be wished,” in view of the temptations that are thrown around some officers and to which they occasionally yield, but that this is what the parties to the contract had in mind when it was made no one will contend. When the nature of the contract of surety-ship is considered, and it is remembered that a surety is entitled to stand strictly on the letter of his undertaking, the impossibility of changing such an undertaking into one of guardianship becomes obvious.
It needs no argument to show that the duties imposed by these ordinances upon the clerk were not any more appropriate to the office of clerk than to that of treasurer — indeed, not as much so. They might have been imposed upon any officer, or a private person delegated with the authority to make the collections. Section 1768, cited by counsel for plaintiff as showing that others than the municipal treasurer might be authorized to collect, does not require the court to hold -that if the council designate the clerk to collect an assessment it thereby becomes a clerical duty. The inherent nature of the duties of clerk can not be thus changed by an unnecessary implication, and where the clerk’s duties are prescribed by statute, as they were in the case at bar, some more specific language will be required than that contained in the section last mentioned in order to indicate that the statutory duties of the clerk included the duties imposed by these ordinances.
The case of State v. Carter, ante, is relied upon by plaintiff as decisive of its contention that the duty of collecting an assessment, imposed by ordinance upon a municipal clerk, thereby becomes a part of the duties of his office. But this court is of the opinion that the Carter case does not so decide so far as sureties on the clerk’s official bond are concerned. The Supreme Court in that case bases its reasoning, not upon the ground that Carter was charged as clerk with the collections involved, but that he was charged as an officer of the municipal *650 government, irrespective of his clerkship, with such duties in the exercise by the council of its powers of making and collecting assessments for sewer purposes and as incidental to such power. Pie was not clerk pro hao vice, but a special collection officer who, coming lawfully into possession of money not his own, should be charged not only under the statute, but on common sense grounds, with the duty of turning it over to the person who had a legal right to it, and that his failure in this particular was embezzlement.
It is clear from the statutes and from the decision in the Carter case that the duty of collecting special assessments is not imposed by statute, expressly or impliedly upon, and that it is not necessarily a part of the duties of clerk of the corporation. This seems to follow from the fact that it is only when such duty is imposed on the clerk by ordinance that he can be charged with its performance, and that the duty of collecting special assessments is no more pertinent to the office of corporation clerk than it is to any other corporation officer who might be charged with the collection of the same. Corporation clerks are frequently charged with this duty because it is sometimes more convenient and less expensive to have them do it than some specially appointed person, but that fact does not make the duty specially appropriate to the office of clerk. The municipal treasurer might just as appropriately be charged with the collection, or, as is sometimes the case, the contractor himself. So the court is constrained to the conclusion that the imposition of the duties of collecting the assessments referred to in the petition in No. 7233 were not, in legal contemplation, as in all probability they were not in fact, intended to be covered by the bond declared on in that cause of action, for their nature and character were essentially different from those pertaining to the office of clerk. It was for Rowe’s failure faithfully to perform the duties of cleric, -as those duties were defined by statute at the time the bond was entered into and as they mighl have been added to by the Legislature or the council, that the sureties undertook, and not for any defalcation he might be guilty of by reason of subsequently being charged with the duty of handling large sums of money as a collection officer and fail *651 ing therein. This is the conclusion of law that, the court comes to, 'and it is a significant fact in this connection that while by the ordinances mentioned in No. 7233 Rowe collected assessments, as he was charged by the ordinances with doing, amounting to $7,872.43, and embezzled of this sum $1,396.63, yet the penalty of the bond is only $1,000. It has been held by a line of cases that any change of duties, even in degree, which increases the risk of a surety on an official bond discharges the surety (Bank v. Dickerson, 12 Vroom, 448; s. c., 32 Am. Rep., 237, and eases cited). Surely where there has been a radical departure in the very nature of the duties, it can not be claimed that a breach of the newly imposed duty was within the undertaking of the surety, and he can not be held therefor.
It was submitted at the hearing, but not argued, that the fact that the ordinances referred to in the petition in No. 7234, having been in force when the bond in that case was given and accepted, requires that the sureties in this latter action be held, because they knew or ought to have known what the duties of their principal were. The language of the condition of the bond in this case is somewhat different from that in the former. After reciting the fact of the election of Rowe as clerk, the language of the condition is that the said Rowe “shall faithfully, honestly and impartially discharge his duties as clerk, according to law,” etc. As nothing can be read into a contract of suretyship but what is fairly therein written, and the surety is entitled to stand on the letter of his undertaking, it appears that the sureties in this latter ease merely became such for the faithful, honest and impartial discharge of Rowe’s duties as clerk, and from what has been said heretofore in this opinion, the court is satisfied that the duties imposed by the ordinances in question were no part of his duties as clerk. The words ‘ ‘ according to law” can not be held to enlarge the object of the undertaking, but must be held to relate to such duties, of a clerical nature, as might legally be imposed either by statute or by ordinance. The law did not contemplate these collection duties imposed by ordinance upon Rowe as clerical duties, and that the parties to the bond did not is rather significantly shown by the fact that while Rowe was charged with collecting *652 $8,962.95 in assessments, of which he embezzled $4,529.45, yet the penalty of the bond is but $1,000.
G. L. Smith', City Solicitor, for plaintiff.
Goeke & Hoskins, for defendants.
The demurrers in both the foregoing cases, therefore, will be sustained.