### Commonwealth, to use, v. Allentown Trust Company.

*Principal and surety—Public officer—Official bond—Acts of May 1, 1919, and May 12, 1921.*

1. A surety upon the bond of a public officer is not discharged by the imposition upon the principal of new duties of a nature and character similar to his existing duties by an act of the legislature.

2. The duties cast upon the Clerk of the Court of Quarter Sessions by the Acts of May 1, 1919, P. L. 102, and May 12, 1921, P. L. 548, authorizing him to accept cash in lieu of the usual recognizance with sureties, were entirely appropriate to his office.

3. A surety on an official bond of a Clerk of the Court of Quarter Sessions is liable for the latter's default in returning a cash deposit in lieu of bail, the condition of the deposit having been fulfilled.

Statutory demurrer. C. P. Lehigh Co., Jan. T., 1923, No. 143.

*A. Edward Coleman,* for use-plaintiff; *Edwin K. Kline,* for defendant.

Reno, J., March 5, 1923.—Defendant is surety upon the official bond of the Clerk of the Court of Quarter Sessions, who assumed office on the first Monday of January, 1918, whereby the Commonwealth was indemnified against

defaults, *inter alia*, of "all moneys which shall be received by him in his official capacity." Thereafter there was enacted the legislation (Acts of May 1, 1919, P. L. 102, and May 12, 1921, P. L. 548) authorizing the Clerk to accept cash in lieu of the usual recognizances with sureties, and on June 30, 1921, use-plaintiff deposited $500 with the Clerk, conditioned for the appearance of Nathan Wallman to answer a pending criminal charge. This condition having been fulfilled and the Clerk failing to return the deposit, use-plaintiff sues the surety for that sum. Defendant's statutory demurrer obliges us to meet the contention that it is not liable upon its bond for a default of duty imposed upon the Clerk by legislation effective after the date of the bond.

It is, of course, firmly established that, as between private parties, any alteration in the obligation or contract, in respect of which a person has become surety without the consent of the latter, extinguishes his obligation and discharges him. But the industry of able counsel as well as our own research reveals no Pennsylvania case which rules the precise question here presented; that question involving the determination of the extent to which this principle is applicable to bonds of public officials. Elsewhere the question has been decided rather frequently, as appears from the cases collated in 22 Ruling Case Law, 503, from which cases the compilers have deduced the following principles:

"In many ways the law in force at the time of the execution of an official bond, giving it a certain legal effect, is part of the bond, and the sureties are considered as having known the law and as having made their engagements in reference thereto. Therefore, if, after an officer has been elected, given bond and assumed the duties of the office, a statute is enacted imposing on him the new and additional duties of collecting and accounting for public funds, such duties are not considered germane to his original office, and the sureties on his official bond are not liable for the non-performance by him of the new and additional duties thus imposed. Yet official bonds cover not merely duties imposed by existing law, but duties belonging to and naturally connected with their office, imposed by subsequent laws, although the new duties should bear some relation to or connection with such office and not be disconnected from and foreign thereto. The reason for this rule is that continued power of the legislature to change the duties of officers is known to the officer and his sureties; and the officer accepts the office, and the sureties execute the bond, with this knowledge. Hence, a bond conditioned for the discharge of the duties of the office should in like manner be understood, not as restricted to duties as then prescribed by law, but as embracing the duties of the office as from time to time fixed and regulated by the legislation. Accordingly, it has been held that the sureties of an officer are liable for moneys received by him under an act passed subsequently to the execution of their bond. Even increasing the responsibilities of an officer does not have the effect of discharging the sureties on his bond from liability."

An examination shows that those of the cases there cited available to us amply sustain the text. Possibly the best considered explanation of the *ratio decidendi* is that presented in People *v.* Vilas, 36 N. Y. 459, from which we extract the rather lengthy but illuminating excerpt:

"The analogy between this class of cases and the contracts of individuals fails in this respect: In the latter, no alteration can be made without the mutual assent of both parties; in the former, the legislature have power at any and all times to change the duties of officers, and the continued existence of this power is known to the officer and his sureties, and the officer accepts

3 D. & C.

Commonwealth, to use, *v.* Allentown Trust Company.

the office, and the sureties execute the bond, with this knowledge. It is, I think, the same in effect as though this power was recited in the bond. Had this been done, it would not be claimed that the sureties were discharged by its exercise. That [Had] an individual given a guaranty of the faithful performance of a contract by one party, containing a clause authorizing the other to make alterations in certain of its provisions, it would not be claimed that the surety was discharged by alteration so authorized; and yet this is nothing more than the sureties knew the legislature were competent to do in the present case. Why has it never been claimed in behalf of officers who had given bonds for the discharge of their official duties that a contract had been made with them in relation thereto, unchangeable by the legislature? Simply because it is understood that all these acts are subordinate to the law-making power, and necessarily subject to such changes as may from time to time be deemed expedient. Every official oath is so interpreted. It is not true that one taking an oath to discharge the duties of any office simply swears to discharge them as then prescribed by law, but that he swears to discharge them as they may from time to time be fixed and regulated by the law-making power. So an official bond conditioned for the discharge of the duties of the office should in like manner be understood, not as restricted to duties as then prescribed by law, but as embracing the duties of the office as from time to time fixed and regulated by the legislature. In the absence of authority determining the question otherwise, my conviction is that any alteration, addition or diminution of the duties of a public officer made by the legislature does not discharge his official bond or the sureties thereon, so long as the duties required are the appropriate functions of the particular officer. That all such alterations are within the contemplation of the parties executing the bond. That imposing duties of another description, and not appropriate to the office, would discharge sureties not coming within such contemplation."

From this doctrine there is, apparently, no judicial dissent, and, being founded upon substantial and moving reasons, it accords with our own sense of justice. Having determined, then, that the surety upon the bond of a public officer is not discharged by the imposition upon the principal of new duties of similar nature and character by an act of the legislature, we experience no difficulty in overruling defendant's contention. For, most assuredly, the duties cast upon the Clerk by the Acts of 1919 and 1921 were entirely appropriate to his office, seeing that the office has always been charged with the duty of taking and preserving recognizances. The new legislation authorized merely a substitution of cash for that which formerly was recorded more or less formally upon the records, but the functions of the office were in no wise altered. That the officer was for the first time entrusted with the taking of cash bail is not a controlling circumstance, inasmuch as the bond clearly contemplated liability for "all moneys received by him in his official capacity."

The case of Com. *v.* Perrego, 40 Pa. Superior Ct. 320, strongly relied upon by defendant, as well as its congeners, Com. *v.* Toms, 45 Pa. 408; Com. *v.* White, 75 Pa. Superior Ct. 554, manifestly do not rule this case, since in all of them it very clearly appears that the additional duties cast upon the official were to be performed by him only after further security for the faithful performance of the new duties was entered by him. Such enactments very lucidly exemplified a legislative intent not to rely upon the security afforded by the general or prior bond, and, hence, indicated also an exemption from liability of the sureties upon the general or prior bond. Had the Acts of 1919 and 1921 required the Clerk to furnish additional security antecedently to the assumption of the power of taking cash bail, these cases would support

defendant's position. As it is, the cases tend to sustain the views we have already expressed.

Now, March 5, 1923, statutory demurrer overruled. Defendant may file affidavit of defence within fifteen days after service upon it of a copy of the order; otherwise, judgment.

From James L. Schaadt, Allentown, Pa.