By the Court.
O’Gorman, J.
The action is for goods alleged in the complaint to have been sold and delivered by Charles and Ferdinand Derleth, composing the firm of Derleth Brothers, in 1873 and 1874 to the defendants, composing the firm of Degraaf & Taylor. Both the plaintiffs and the defendants were engaged in the manufacture of furniture.
In June, 1875, the firm of Derleth Brothers, by an assignment in writing, transferred and assigned to one Henry Volkening, all their claims against Degraaf & Taylor, for goods sold and delivered, and on an account stated and settled between them on or about November 28, 1874, showing a, balance due to Derleth Brothers, of $2,927.77. By subsequent assignments the claim now in suit was transferred and assigned to the plaintiff.
The litigation as to the transactions in suit has been a long one.
Henry Volkening, as such assignee, in 1875, brought suit in this court against Degraaf & Taylor, the defendants herein, claiming judgment against them for the sum of $2,609.50, with interest, from November 28, 1874, alleging that said sum was the balance found to be due by them to Derleth Brothers, on an accounting between the firms of *375 Derleth Brothers and Degraaf & Taylor, had on or about November 28, 1874. That action was tried on June 20, i 1877, and resulted in the dismissal of the plaintiff’s complaint, on the ground, as substantially stated by the learned trial judge, that the weight of testimony showed that the plaintiff’s goods (being articles of furniture), were used in fitting up the saloon of one McKinley, and were furnished by Derleth Brothers, under a special contract with Degraaf & Taylor, both firms to share in. all the responsibility of the transaction; that it was a species of joint adventure ; and that the action, being brought upon an account stated, was not sustained by the evidence. From this judgment against the plaintiff in that action, an appeal was taken to the general term of this court, which was argued in November, 1878, and the general term affirmed the judgment, with costs, holding that the action was brought on an account alleged to have been stated and settled between Derleth Brothers and Degraaf & Taylor, and that on the evidence that action could not be maintained in the form in which it was brought; that all the essential elements of an account stated seemed to have been wanting; that if defendants had been guilty of any breach of contract with Derleth Brothers, they might be held to answer in another action founded on such breach or offense.
But the plaintiffs were bound to allege their true cause of action, and having failed to prove the one alleged, the complaint was properly dismissed. It was not a variance, but a failure of proof (Volkening v. Degraaf, 44 Super. Ct. 424). From this decision of the general term of this court, the plaintiff Arolkening appealed to the court of appeals. By that court the decision of the general term was sustained (81 N. Y. 268).
The court of appeals, in its opinion, held that the cause of action in the complaint was on an account stated, and nothing else ; that plaintiffs had wholly failed to make good that cause of action; that no amendment of the pleadings having been asked below, it was right to dismiss *376 the complaint for failure to make proof of what it averred. That decision was made in June, 1880.
The action in the case now at bar was begun in December, 1879, and is based wholly on a claim for goods sold and delivered by Derleth Brothers to the defendants, and not upon any claim of an account stated and settled between them. This action was tried on April 4, 1883, before Judge Ingraham and a jury, who failed to agree on a verdict. In December, 1883, this action was tried again before Judge O’Gorman and a jury, who failed to agree on a verdict. In April, 1884, this action was again tried before Judge Truax and a jury, who found a verdict in favor of the plaintiff for $4,214.72, and from the judgment entered thereon this appeal is taken.
From this long litigation the court is, no doubt, so well possessed of the facts of the case and the evidence, that a statement of them in detail is now unnecessary. The' testimony has been substantially the same in all the various trials above referred to.
The first question of law presented to the court in the present appeal is as to the right of the defendants to put the record of the action of Volkening v. Degraaf and another in evidence, as a bar to any recovery in this action, as res adjudicata, and a sufficient cause for dismissal of the plaintiff’s complaint.
The learned tidal judge did not, in my opinion, err in refusing to admit this record in evidence and in refusing to treat it as a bar to this action. The action of Volkening v. Degraaf and another was founded specifically on the allegation that the amount claimed to be due to the Derleth Brothers, by the defendants, had been ascertained by an accounting between these two firms. In support of this cause of action it was held that no evidence was given, and because of the total failure of the plaintiff in that action to support that claim by proof, and on that account alone, his complaint was dismissed. It matters nothing that the testimony of witnesses in that case was substantially the same as that produced at the trial of the *377 case at bar. The issues, to support which the testimony was introduced, were in these cases, in form and in substance, wholly different. The plaintiffs claim in the present action on goods sold, was not considered in Volkening v. Degraaf and Taylor. In order that the decision in one case can control another, the issues in both must be identical, not only in name, but in fact and substance (Palmer v. Hussey, 87 N. Y. 303). There was, therefore, strictly speaking, no adjudication of Volkening v. Degraaf and Taylor, entitling it to be pleaded as a bar to the present action.
Again, in Volkening v. Degraaf and Taylor, the complaint was dismissed ; and it has been held, that in such case, the decision is not on the issues in the case, which remain still undetermined and the case is not yet u res adjudicata ” (People v. Vilas, 36 N. Y. 459 ; Code, § 1209).
The contention between the plaintiff and defendants, as to the facts of the case at bar, depended wholly on the nature of the contract between Derleth Brothers and the defendants, Degraaf & Taylor, under which the goods of the former firm were furnished by Derleth Brothers for the saloon of McKinley. To ascertain what this contract really was, it was necessary to consider a paper writing signed by both firms (which paper, as was conceded, did not contain all the agreement between them), a receipt signed by Derleth Brothers, and various bills furnished by Derleth Brothers to Degraaf & Taylor ; and it was necessary also to weigh and consider the testimony, as to a certain conversation, alleged on the part of the plaintiff to have occurred between Ferdinand Derleth, one of the firm of Derleth Brothers, and Mr. Taylor, one of the defendants, a day or two before the said written paper purporting to be a contract, was signed. The occurrence of this conversation was denied by the defendants.
The attitude of the parties toward one another was this : Derleth Brothers had been in the habit for years, of supplying furniture, in the rough, to Degraaf & Taylor *378 who used to complete the furniture, polish it, and fit it for the use of their customers. In October, 1813, defendant Taylor told Ferdinand Derleth, one of Derleth Brothers, that he (Taylor) had a job to fit up a saloon for one McKinley, and wanted to know how much Derleth Brothers would charge to make fixtures for it. Taylor proposed that payment should be made to Derleth Brothers," part in cash and part in McKinley’s notes secured by his chattel mortgage, and Degraaf & Taylor were to indorse the notes without recourse. Ferdinand Derleth said that he desired to consult his brother, and came to Taylor the next day and said, “Well, I have talked with my brother about it, and we have come to the conclusion that if you can afford to take the risk, we can.” These conversations resulted in the preparation of a written fist of goods to be furnished by Derleth Brothers for McKinley’s saloon, with their prices for the same, amounting in all to $3,139.00. This paper was headed, “Derleth for McKinley’s saloon,” and, at the foot of the figures, was this sentence : “ Derleth to receive his proportion of the $3,000 cash paid by McKinley, and to take the notes of McKinley for balance, without recourse—$-cash to be paid when received from McKinley,”—and it was signed : “ J. Richards, 0. & F, Derleth.”
Richards was, In 1813 and 1814, a member of the firm of Degraaf & Taylor.
The furniture was furnished by Derleth Brothers, and delivered at defendants’ store. Derleth Brothers received from defendants, $1,000 in cash, out of cash paid defendants by McKinley. This was all that the defendants received from him. Their contract with him was completely performed about the tenth or twelfth of January, 1814, by delivery to him of all the goods. About that time, McKinley absented himself from his business and engaged in a drunken debauch. He gave to one Ward a chattel mortgage for $4,000, covering all the goods furnished under the contract. This mortgage was filed on January 12, 1814, and exhausted all the security ; *379 for it is in evidence that the goods, if sold, would not realize more than $4,000, and when Taylor, one of the defendants, was able to obtain an interview with McKinley, he refused to give any notes, and offered a second mortgage on the same property, which would have been wholly without value. The defendants thereupon brought an action against McKinley, obtained judgment, and exhausted all legal means to recover the price of the goods furnished to him, but wholly failed to recover anything from him.
The defendants, therefore, failed to deliver to the plaintiffs any of McKinley’s notes, and this action is brought to recover from the defendants the balance of the price of the goods furnished by Derleth Brothers, and unpaid, as for goods sold and delivered by Derleth Brothers to defendants.
The defendant’s position is, that the transaction was not one of goods sold and delivered to themselves, but of goods furnished to McKinley, on a special agreement between defendants and Derleth Brothers ; that the two firms were to take the risk of the performance by McKinley of the contract between defendants and him ; that among those risks was that of McKinley failing to deliver the notes ; and, that if he failed to do so, the defendants were not to be liable to Derleth Brothers for the amount of the notes, but Derleth Brothers should share the loss with the defendants.
In support of their contention, they rely mainly on the above mentioned conversations and memorandum, and on a receipt from defendants, signed Derleth Brothers, in December, 1814, of a sum of money for all demands to date,—“ except the unsettled matter between us and John McKinley.”
The plaintiff, on the other hand, claims that the only risk assumed by Derleth Brothers was of the non-payment of the notes of McKinley, and that the non-delivery of the notes of McKinley to defendants was a risk to be borne wholly by them.
*380 In support of this position, the plaintiff gave evidence of a conversation between Ferdinand Derleth and said Taylor a few days before December 5, 1874 (the date of the list and memorandum), in which conversation, he (Derleth) said to Taylor, “ Suppose you deliver all these goods and never get the notes ? What then ?” Taylor then said, “That’s none of your business. I will get the notes and pay you with them.” This conversation Derleth testified took place in the shop of Derleth Brothers in Crosby street. Taylor, in his testimony, denied that such conversation ever took place.
If, as the plaintiff contends, the intention and agreement of the parties were, that the goods of Derleth Brothers were sold and delivered to defendants, to be by them paid for, partly in cash, when received from McKinley, and the balance absolutely in notes of McKinley secured by mortgage, and that defendants took all the risk of McKinley’s failing to deliver the notes, then Derleth Brothers, or their assignees, were entitled to recover from defendants, on their failure to deliver the notes, such damages as Derleth Brothers were entitled to receive for the defendants’ breach of contract.
If, on the other hand, as claimed by the defendants, ‘ . the agreement was special, and meant that Derleth Brothers and the defendants were to enter into a joint venture, assuming joint risks, one of which was the failure of McKinley to deliver his notes, then the plaintiff’s action should fail.
That was the issue in the case, and out of the conflict of testimony, and by weighing aE the testimony, and by giving to the testimony of each witness its proper value, this issue was to be decided.
This was pecuharly a question for the jury, under the right instruction of the court. The jury found a verdict for the plaintiff, sustaining the claim that Derleth Brothers had sold and delivered the goods to Degraaf & Taylor, and that on their failure to deliver the notes of McKinley they were hable in damages. Although this case should *381 stand on its own merits, and should be decided according to the evidence laid before the court and jury, irrespective of any evidence presented in any other action, or in any former trial of this action, yet it may not be unworthy of notice, that on the testimony presented in the case of Volkening v. Degraaf & Taylor, above referred to, and which case subsequently was considered by the court of appeals (81 N. Y. 268), the learned trial judge in his charge to the jury expressed the opinion, that the transaction between Derleth Brothers and Degraaf & Taylor, which is the basis of the action now at bar, was out of the ordinary course of dealing between these two firms, and rested on a separate agreement, which constituted a sort of joint adventure between them ; that it was agreed that the work should be proportioned between them ; that Derleth Brothers would take their proportion of the cash when received, and of the notes when received by Degraaf & Taylor from McKinley, and moreover take the notes without recourse. This opinion, however, thus expressed, was coupled with the observation of the learned trial judge, that it was unnecessary to determine in that action what were the precise rights of the two firms under the special contract, and that, whatever these rights were, they could not be enforced in that action.
The court of appeals, in their opinion, take a similar view of the legal effect of the evidence in that case (Volkening v. Degraaf, 81 N. Y. 271). “There is no room in the testimony,” they say, “for the claim that the defendants were in any sense the guarantors of McKinley's ability to pay. The most that can be claimed from the testimony is, that the defendants should, as good and vigilant business men, bring the contract between them and McKinley to a close in due time ; get from him the money and notes and chattel mortgage that he was to give, and turn over to the plaintiff his part thereof. If McKinley would not, on due endeavor by the defendants, pay money or give notes, the defendants were not to be holden to the plaintiff for his share.” This opinion, which must also be *382 regarded as only obiter, and by no means controlling the case at bar, is yet not without interest in the present discussion.
But the jury in the case at bar, in judging of the evidence before them, arrived at a different result, and this court cannot say that their verdict is against the weight of the evidence, or of such evidence as they may have deemed most worthy of belief, in so far as such evidence supports the inference that the defendants contracted absolutely to deliver the notes of McKinley to Derleth Brothers, in payment of the goods furnished by them, and in so far as the verdict held the defendants answerable to Derleth Brothers in damages on account of their failure to deliver the notes.
But the question still remains, what should be the measure of damages for breach of this contract.
The learned counsel for the plaintiff contended that plaintiff was entitled to recover the balance due for goods sold by Derleth Brothers in cash, with interest from the time of demand of the notes, and the jury, in their verdict seem to have followed that theory. In ■ this I think the jury erred.
The contract of the defendants was to deliver to Derleth Brothers the notes of McKinley secured by his chattel mortgage. They assumed no responsibility for the payment of the notes ; but on the contrary, their agreement was that the notes should be indorsed by defendants without recourse. McKinley refused to deliver to defendants any notes. But his notes, if he had delivered them, unless secured by a sufficient chattel mortgage, would have been worthless ; and the only chattel mortgage, he would give, and which he claimed was all the contract called for, was a second mortgage, and that, as a security, was without any value. Delivery of the McKinley notes to the plaintiff would, therefore, have been of no apparent service to the plaintiffs, and failure to deliver the notes to them caused them no loss.
The amount found by the verdict as damages in favor *383 of the plaintiffs, should have been no more than would have placed them in a position, as favorable as they would have occupied, if the McKinley notes had been delivered to them. The verdict was for $4,214, being the whole amount of their claim, and it placed them in a position far better than they could have occupied if the McKinley notes had been placed in their hands. In effect, the verdict held the defendants to all the responsibility of guarantors of payment of the notes, as if they had been delivered, a responsibility, which the defendants, by their contract with the plaintiffs, expressly declined to assume.
In Harris v. Moody (30 N. Y. 278), cited by the learned counsel for the plaintiff, it was the opinion of the court, that in an action to recover possession of certain bonds of the state of Michigan, the measure of damages should be the face value of the bonds, unless their value was proved to he less. In Potter v. Merchants’ Bank of Albany (28 N. Y. 655), it was held that in an action for conveyance of a promissory note, the measure of damages was the face amount, but defendant might show insolvency of the parties to lessen the damages. To the same effect are— Thayer v. Manley (73 N. Y. 307-8); Hynes v. Patterson (95 N. Y. 6). In Dowdney v. McCullom (59 N. Y. 367), the opinion of the court is to the same effect, and draws a clear distinction between cases like this at bar and the case of Pinney v. Gleason (5 Wend. 39 5), cited on behalf of the plaintiff.
This question of the measure of damages was not raised at the trial, or called to the attention of the trial judge. I think, however, that in the interest of justice it may still be considered by this court (Gossler v. Lissberger, 19 Week. Dig. 429 ; Standard Oil Co. v. Amazon Ins. Co., 79 N. Y. 510).
For these reasons, I am of the opinion that the amount allowed by the jury was excessive, and that the judgment should be reversed, and that a new trial should be granted *384 on payment by defendants of the costs and disbursements of the trial and of the appeal.
Sedgwick, Ch. J., and Truax, J., concurred.