### ROBERTSON et al. v. SULLY.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

1. ACTION ON GUARANTY—FORM OF JUDGMENT.

In an action against a stockholder of a corporation on a guaranty of an indebtedness due plaintiffs from the company, and secured by the deposit in a bank of certain debentures issued to defendant by the company, the judgment cannot provide for the return of the securities on payment; especially where it appears that such securities were deposited with such bank as a stakeholder, and the contract did not authorize plaintiffs to take possession except to enforce the charge against them, or make any application of them.

2. SAME—TENDER OF COLLATERALS—WHEN NECESSARY.

In an action on a guaranty of an indebtedness due plaintiffs, secured by the deposit in a bank of certain collaterals, it appeared that the contract provided that such securities should be deposited with the bank so long as any part of the debt due plaintiffs remained unpaid, or until it should be necessary to enforce the charge, by sale or otherwise. *Held*, that no tender of such securities to defendant was necessary to enable plaintiffs to maintain the action.

3. SAME—TENDER OF EVIDENCE OF DEBT.

It appeared that the indebtedness to plaintiffs was represented by debentures of a corporation, and that the contract of guaranty was that defendant would pay in case the company defaulted, on notice of default, and that, on such payment being made, the debentures should be transferred and delivered to defendant. *Held*, that no tender of such debenture to defendant was necessary to entitle plaintiffs to maintain the action.

4. SAME—RELEASE.
    A contract between plaintiffs, defendant (a stockholder of a certain corporation), and such corporation, whereby defendant guarantied the payment to plaintiffs by the company of a certain sum of money loaned it, and evidenced by its debenture, provided, in clause 5, that, so long as any part of such sum remained owing plaintiffs, defendant would give his votes and influence to keep B. (one of plaintiffs, and also a stockholder) in his position as a director, and that, if he ceased to be a director before such sum was paid, defendant would thereupon purchase B.'s stock at par value. After such contract was executed, there was indorsed on its back, without defendant's knowledge, a "memorandum supplemental to" it, signed by such company only, which recited that it was part of the arrangement under which the contract was made that the company should make "the agreement hereinafter contained," which was inadvertently omitted, and there should be added to clause 5 the proviso that if defendant, his executors, etc., made default in purchasing such shares, and having them duly transferred, or if the company refused to register such transfer, it would, within seven days after such default or refusal, procure them to be purchased at par by, and transferred to, some responsible transferee. *Held*, that such supplemental memorandum was only an additional contract of the corporation, and did not release defendant on his guaranty.

5. CORPORATIONS—CONTRACT RELATING TO TRANSFER OF STOCK.
    Such supplemental agreement did not deprive the corporation of the right given it by its articles of association to insist on a lien on B.'s stock for any indebtedness due it from him, or to require the payment by him of such indebtedness and any overdue calls on his stock before registering a transfer of such stock.

Appeal from judgment on report of referee.

Action by William Robertson and others against Alfred Sully on a written guaranty. From a judgment entered on the report of a referee in favor of plaintiffs, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Elihu Root, for appellant.
S. Hanford, for respondents.

VAN BRUNT, P. J.   The Clarendon Land Investment & Agency Company, Limited, was formed and organized in or about the year 1883, at London, in England, the plaintiff Robertson being then and thereafter one of the directors thereof, and at certain times holding the office of chairman of the board of directors.   On the 22d of December, 1887, the association adopted certain revised articles of association, which were confirmed on the 17th of January, 1888.   The only parts of those revised articles of association which bear on any question involved in this action are as follows: The directors were authorized from time to time to make such calls upon the members in respect to all moneys unpaid on their shares as they might see fit, there being certain regulations governing notice of and the amount of such calls.   Provision was then made for the addition of interest upon calls which were not paid upon the day appointed, and also for a forfeiture of stock because of failure to pay any call.   The articles further provided that the instrument of transfer of any share in the company should be executed both by the transferror and transferee; and that the transferror was to be deemed to remain the holder of such share until

the name of the transferee was entered in the registry book in respect thereof; and that the directors might decline to register any transfer of shares unaccompanied by sufficient evidence to prove the title of the transferror, or any transfer made by a member who is indebted to the company or under any liability to the company, or on the ground of such shares not being transferable consistently with any agreement made with the allottees or holders in respect thereof, or in the case of shares not fully paid up to a transferee of whom they do not approve, without being compelled to state their reasons for such disapproval. The articles further provided that the company should have a first and paramount lien on all the shares of stock of which any person was the holder, or one of the several joint holders, for all moneys due to the company from him either alone or jointly with any other person, whether a member or not; and, where a share of stock is held by more persons than one, the company should have a lien thereon in respect of all money so due to them from all or any of the holders thereof, and the directors might refuse to register the transfers on any shares, whether fully paid up or not, or of stock by any holder or joint holders who is or are, or any one of whom is, then indebted to the company, whether solely or jointly with any other person, on any account whatever.

On the 29th of July, 1886, the defendant and the plaintiff entered into an agreement by which, after reciting that the plaintiff, at the request of the defendant, had agreed to lend to. the Clarendon Land Investment & Agency Company the sum of £7,000, upon the security of a mortgage debenture of the said company for £7,000, payable on the 12th of August, 1889, with coupons attached, which debenture formed part of an issue secured by an indenture dated August 8, 1884, and made between the said company, of the one part, and Sir Charles Clifford and John Eldon Gorst, of the other part, and reciting that, at the time of said advance, it was agreed between the company and the plaintiff that if at any time previous to August 12, 1889, the company should issue debentures to the amount of £140,000, then, upon seven days' notice to the company in writing, the £7,000 should become due; and reciting that the defendant was the largest shareholder of the company, and was entitled to have issued to him, in part payment of moneys owing to him by the company, debentures of said issue to the amount of upward of £39,000; and also that the plaintiff had asked the defendant to secure to him the repayment of said sum of £7,000, with interest, which the defendant had agreed to do in the manner in said agreement thereinafter appearing,—the defendant covenanted with the plaintiff that in case the company should make default in payment of said sum on the 12th of August, 1889, the defendant would on said day pay to the plaintiff the said sum of £7,000; and also that in case of default in the payment of the interest, or any part thereof, the defendant covenanted on demand to pay to the plaintiff such interest. And it was by said agreement further agreed that the debentures to be issued to the defendant to the amount of £140,000 should

stand charged by way of collateral security with the payment to the plaintiff of said principal sum of £7,000 and interest thereon. And it was further agreed that said £140,000 of debentures should be deposited with Messrs. Lloyd, Barnett & Bosanquet, Limited, of the city of London, to be held by them so long as any part of said sum of £7,000, or any interest thereon, should remain unpaid; but on the repayment thereof, with interest, as aforesaid, they should be assigned by the plaintiff to the defendant, and be returned to him. The agreement also provided that, so long as any part of said sum should remain owing to the plaintiff, the defendant would at all times exercise his vote and influence in and towards keeping the plaintiff in his then present position as chairman of said company. The plaintiff also agreed to accept repayment at any time prior to August 12, 1889, of said sum of £7,000 and interest. And it was further agreed that in case the company should at any time before the said 12th of August, 1889, issue debentures to the total amount of £140,000, the plaintiff would be entitled to call for the repayment by the company of said loan of £7,000, upon giving seven days' notice to the company; and, in case said company should fail to comply with said call, that the plaintiff, upon giving one calendar month's notice to the defendant, would be entitled to require the payment by the defendant of said sum of £7,000 and interest; and that, upon payment by said defendant of said sum, he would be entitled to receive his securities. And it was also provided that the plaintiff would be entitled to require the proceeds of all debentures sold prior to the 12th of August, 1889, to be applied to the payment of said £7,000.

The said sum not having been paid upon the 12th of August, 1889, as provided by the above agreement, on the 29th of October, 1889, an agreement was entered into between the company, of the first part, the defendant, of the second part, and the plaintiffs, of the third part. This agreement recites the indebtedness upon the debenture for £7,000, which fell due on the 12th of August, 1889; and that the defendant was the holder of £45,703.-11s. 11d. of mortgage debentures of the company, and was also a large shareholder. It also recites the execution of the agreement of July 29, 1886, by which the defendant guarantied the payment by the company of said £7,000 and interest, and which declared that £14,000 of certain mortgage debentures of the company then about to be issued should stand charged by way of collateral security for the payment of said principal sum of £7,000 and interest; and that the plaintiffs, at the request as well of the company as of the defendant, had agreed that the date for the repayment of said principal sum should be enlarged to the 12th of August, 1892, upon the terms and conditions thereinafter in said agreement more particularly appearing. In consideration of the premises, the defendant agreed in case the company should make default in payment of said principal sum of £7,000 on the 12th of August, 1892, that he would on said day pay to the plaintiffs the said sum of £7,000; and also that in case the company should make default in the payment of the interest on said sum of £7,000, or any part

thereof, the defendant would, on demand, pay to the plaintiffs the interest in respect of which the company should have made default. The defendant also, in and by said agreement, covenanted that he would forthwith transfer or procure to be transferred to the plaintiffs £14,000 nominal value of the mortgage debentures of the company, so held by him as aforesaid, and all payable on the 12th of August, 1892, and by said agreement declared that said debentures should thenceforth stand charged as collateral security with the payment to the plaintiffs of said principal sum and interest. The agreement further provided that if, at any time prior to the 12th of August, 1892, the total debenture issue of the company should amount to £140,000 in nominal value, the company would, upon receiving seven days' notice in writing, repay to the plaintiffs the said principal sum of £7,000 and interest; and if the said company made default in the payment, upon the defendant receiving one calendar month's notice in writing, he would pay said sum and interest, upon which payment the mortgage debentures securing said sum and all uncashed coupons attached or belonging to the same should be transferred and delivered to the defendant or as he should direct, and the mortgage debentures thereby charged should be transferred and delivered to the defendant or his nominees. It was further provided that said debentures thereby charged, amounting to £14,000, should be deposited with the Lloyds Bank, Limited, at No. 70 Lombard street, London, so long as any part of said sum or any interest thereon should remain unpaid, or until it should be necessary to enforce said charge by sale or otherwise; and, upon repayment of said sum and interest, it was provided that said debentures should be transferred and delivered to said defendant or his nominees. The agreement further provided that, upon receiving one month's notice of intention to pay, the plaintiffs should accept payment of said loan. The fifth clause of said agreement was as follows:

"So long as any part of the said sum of seven thousand pounds shall remain owing to the said William Robertson, Joseph Jupp, and William Dallas Ochterlony Greig [the plaintiffs], the said Alfred Sully [the defendant] will at all times exercise his votes and influence in and towards keeping the said William Robertson in his present position as a director of the company. If the said William Robertson shall, from any cause whatever, cease to be a director of the company before the said principal sum and interest shall have been wholly paid and discharged, the said Alfred Sully will immediately thereupon purchase at their par value all the shares in the company's capital for the time being belonging to the said William Robertson."

The agreement further provided that the plaintiffs should be entitled to require that the proceeds of any of the company's debentures sold by the defendant before the 12th of August, 1892, should be applied in and towards the payment of said sum of £7,000.

On the 31st of December, 1889, the Clarendon Company indorsed upon the back of the contract or agreement above mentioned the following memorandum:

"Memorandum supplemental to the within indenture: Whereas, it was part of the arrangement under which the within-written indenture was entered

into that the company should enter into the agreement on its part hereinafter contained, but such provision was inadvertently omitted from the said within written indenture, and it is accordingly desired to vary the said indenture in manner hereinafter appearing: Now, it is hereby agreed as follows: (1) There shall be added at the end of clause five of the said indenture the words following, that is to say: 'Provided always that if the said Alfred Sully, his executors or administrators, shall make default in purchasing the said shares, and having the same duly transferred to him or them, or if the company shall refuse to register such transfer, then, and in either of such cases, the company will within seven days after such default or refusal, as the case may be, procure the said shares to be purchased at their par value by, and transferred to, some responsible transferee.' "

This supplemental agreement appears to have been executed by the company, but by none of the other parties to the original agreement. It was, however, in the possession of, and produced by, the plaintiffs. There is no evidence that the defendant had any knowledge of this supplemental agreement, or of the facts therein recited, prior to the commencement of this action.

The Clarendon Company failed to pay the said loan of £7,000 and interest, and this action was brought to recover the amount thereof from the defendant upon his guaranty contained in said agreement last above mentioned. The defendant claimed as a defense that he was not a party to said supplemental agreement; that it altered the contract to which he was a party; and that he was thereby discharged; and, furthermore, that there was no tender made to him of the £14,000 of debentures which had been deposited with the Lloyds Bank as security for the payment of the loan guarantied. These issues were referred to a referee, who reported in favor of the plaintiffs; and, from the judgment thereupon entered, this appeal is taken.

The judgment is claimed to be erroneous, not only for the reasons set up in the answer, but because there was no provision in the judgment for the return of the securities upon payment. In respect to the objection as to the form of the judgment, it is manifest that, this being an action at law to recover a contract debt, no provision such as is suggested could have been inserted in the judgment. It further appears from the agreement that these securities were to be deposited with the Lloyds Company as a stakeholder for the benefit of both parties, and there is no provision in the agreement authorizing the plaintiffs to take possession of the securities and make any application of them whatever. It was provided that the securities should be deposited with the Lloyds Bank so long as any part of said sum of £7,000, or any interest thereon, should remain unpaid, or until it should be necessary to enforce said charge by sale or otherwise. The plaintiffs could under no circumstances take possession of these securities except for the purpose of enforcing the charge against the securities by sale or otherwise. These are the terms of the agreement, and the Lloyds Bank would have no authority to deliver the securities to the plaintiffs for any other purpose, even if that would be allowable under the agreement.

The cases which have been cited as to the necessity of the tender of collaterals at the time of demanding the payment of promis-

sory notes, such as Bank v. Faut, 50 N. Y. 474, have no application to the question at bar. In that case it was held that, in order to make such a demand upon the maker of a promissory note who had deposited collaterals for the payment of that note as would enable him to charge an indorser, it was necessary that the collaterals should be tendered to the maker at the time of the demand of payment, for the simple reason that, when he paid the note, he was entitled to receive his collaterals, they, in fact, forming part of the note, and that, when the maker paid his note, the maker could not be compelled to hunt around and gather up his collaterals, and that the holder of the note and collaterals, to charge the indorser, must make such a demand upon the maker at maturity as to call upon him to comply with his contract to pay upon receipt of his collaterals. In the case at bar, as already observed, no such question was presented. The securities were deposited with a stakeholder, to be transferred upon payment, not upon obtaining judgment. The plaintiffs may be very far from getting payment by getting a judgment. When the defendant tenders payment, then he can ask for his collaterals. But it is urged that, if this is true, such reasoning does not apply at all to the £7,000 debenture. It is difficult to see what tender the plaintiffs are bound to make in respect to that security. The provision of the contract is that the defendant will pay in case the company make default in payment, and, upon such payment being made by him, the debenture in question was to be transferred and delivered to him. He has not made payment, and therefore is not in a position to claim such a transfer; the condition precedent of such transfer not only not having been fulfilled, but not having been tendered. The plaintiffs were not bound to demand payment. All that they had to do was to give notice of the default. Then it was the duty of the defendant to tender payment, and, when he tendered payment, he could demand the transfer. That he has not done. A right of action accrued to the plaintiffs without any demand, and hence there was nothing for them to tender.

It is, however, urged that the change in the contract made by the supplemental agreement operated to discharge the defendant from his guaranty. It seems to us that the mere attempt to incorporate this supplemental agreement into the original contract, which was executed by all the parties, does not affect the question of the release of the defendant from his guaranty; and that it is to be construed by the same rules as would necessarily obtain in the case of an independent agreement subsequently entered into between the parties. If this agreement in any way changed the relations of the parties, and at all injuriously affected the surety, he was undoubtedly discharged, whether the supplemental agreement is to be considered as a part of the original contract or as an independent agreement. Cases are cited in which it has been decided that the law is that any alteration in the obligation or contract in respect of which a person has become surety without the consent of the latter extinguishes his obligation, and discharges him; and this result follows irrespective

of the inquiry whether the alteration would work any injury to the surety or not. The reason upon which the rule is founded is that the surety has never made the contract upon which it is sought to charge him. His answer is, if it is sought to charge him upon the altered contract, that he never made any such bargain, and, if upon the original contract, that such contract no longer exists, having been legally terminated by the altered or substituted contract made by the parties; in either contingency the answer furnishes a complete defense. People v. Vilas, 36 N. Y. 459, 460. This rule, however, has no application to the situation disclosed by the record. There was no alteration whatever in the contract which the defendant had guarantied to perform. There were additional stipulations in respect to what the company would do in case the defendant failed to comply with his contract of guaranty as to the indebtedness mentioned in the agreement. He was to do nothing more. His obligation was not changed. It was only an additional contract upon the part of the company in case the defendant failed to comply with his contract. Now, it could not be urged for a moment, if this supplemental agreement, entered into, as it was, after the signing of the original contract, had not been attempted to be ingrafted into that contract, but that the plaintiffs and the company would have had the right to make it. The plaintiffs had a right to take additional security, to become available in case the defendant failed to comply with his contract; and that is what is done by the supplemental agreement, and nothing more.

But it is said that the assumption by the company of an obligation in the event of its refusal to register a transfer is more than an assumption by the company of an obligation in the event of failure on the part of the defendant to comply with the obligation which he had entered into; that it is a separate and distinct obligation, not dependent upon the failure of the defendant to comply with his contract, but upon the refusal of the company to register a transfer, the company thereby depriving itself of the right to insist upon the lien and require the payment by the plaintiff Robertson of overdue calls upon his stock and all other indebtedness from him to the company before registering a transfer of his stock, and thus relieving him from obligation to pay future calls. We do not think that the agreement is susceptible of the construction placed upon it by the counsel in the above proposition. It is to be observed that, by the provisions of the articles of association to which reference has been had, the directors may decline to register any transfer of shares not fully paid up to a transferee of whom they do not approve; and they here agree, in case a transfer to the defendant, his executors or administrators, should not be approved, to procure the shares to be purchased at their par value by, and transferred to, some responsible transferee. They do not thereby release any claims that they might have upon the plaintiff Robertson for anything that was due upon those shares. They simply agree that they will procure a responsible party to purchase them; their rights, as against the shares, for

any indebtedness of Robertson not being in any wise released, or attempted to be released. This was an obligation entered into by the company at the foot of the contract, to become operative only in the event of the failure of the defendant to comply with the obligations which he had entered into, and which in no way deprived the company of any property which the defendant had a right to claim they should apply to the payment of its indebtedness to the plaintiffs.

It has recently been urged before us that the taking of additional security upon a promissory note discharged the indorser; but such a claim has not yet been recognized. It seems to us that the position of the defendant in respect to this subsequent agreement is that, because he had guarantied this debt, the plaintiffs could not agree with the company for additional security in case of his failure to fulfill his guaranty.

We think, upon the whole case, that the judgment is right, and should be affirmed, with costs. All concur.