EL PUEBLO *v.* MIRÓ ET AL.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 592.—Resuelto en junio 21, 1911.

COLECTOR DE RENTAS INTERNAS—RESPONSABILIDAD DE LOS FIADORES—EXTINCIÓN DE LA FIANZA POR EFECTO DE CAMBIOS EN LAS LEYES.—Los fiadores de un colector de rentas internas nombrado con fecha 1°. de mayo de 1900 y que suscribieron la obligación de fianza con fecha 14 de mayo de 1900, no son responsables de un desfalco cometido por dicho colector de rentas .internas con posterioridad a la fecha en que empezó a regir el Código Político, pues el artículo 329 de este Código, reproducción sustancial del artículo 38 de la Ley de Rentas, de 31 de enero de 1901, contenía preceptos imperativos que creaban nuevos distritos de recaudación y nuevos colectores con mayores responsabilidades, y aun en el caso de que continúe desempeñando el cargo la misma persona, es en realidad un nuevo nombramiento que termina la responsabilidad de los fiadores primitivos.

ID.—FUNCIONARIOS DE FACTO—FALTA DE PRUEBA DE UN NUEVO NOMBRAMIENTO.—Aún en el caso de que no se haya probado que se hizo nuevo nombramiento a favor de un colector de rentas internas, después de regir el Código Político y de que continuara desempeñando el cargo en virtud de nombramiento anterior a la vigencia de dicho Código, la presunción es que el Tesorero de Puerto Rico

ha cumplido con el deber que le imponía el artículo 329 del Código Político, haciendo un nuevo nombramiento, y la parte que deseara aprovecharse de la falta de ese nuevo nombramiento para hacer responsables a los fiadores, ha debido justificar esos hechos mediante prueba.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Jesús M. Rossy, Fiscal.*

Abogado de los apelados: *Sr. Luis Pereyó Quiñones.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

El día 1 de mayo de 1900, Enrique Miró fué nombrado colector de rentas internas del 8º. distrito de Puerto Rico, y también designado y nombrado agente pagador para distribuir los fondos que se le adelantaran para pago de sueldos y gastos de su oficina y para el de los sueldos de los funcionarios judiciales de su distrito.

El día 14 de mayo, dicho Enrique Miró, como principal, y Jesús L. Pereyó y Marcelino Borges, como fiadores, otorgaron una fianza al Tesorero de Puertto Rico a favor de El Pueblo de Puerto Rico, por la suma de $2,000. La obligación contenida en la fianza era como sigue:

"Si dicho Enrique Miró ejecuta y desempeña bien y fielmente los deberes y cargos que se impongan como colector de rentas internas y agente pagador, de acuerdo con la ley, y todas las órdenes, reglas y reglamentos aprobados de acuerdo con la ley y rindé cuentas buenas y satisfactorias de todas las rentas, derechos, dineros, fianzas y bienes que vengan a su poder como tal colector de rentas internas, desde el 1 de mayo de 1900 en adelante, y paga todos los dineros así recibidos y cobrados, en totalidad, al Tesorero de Puerto Rico, y si rinde cuentas bien y fielmente por todos los dineros que vengan a su poder como tal agente pagador, desde el 1 de mayo de 1900 en adelante, y paga al Tesorero de Puerto Rico el remanente líquido que de los mismos quede, entonces esta obligación será nula; en caso contrario tendrá completo efecto y vigor."

La presente acción se estableció tanto contra el principal como los fiadores, el 28 de junio de 1906, y después de hacerse relación en la demanda de la fianza y de las estipulaciones de

la misma, en el segundo párrafo se expresa que dicho Enrique Miró,—esto es, el colector a quien la presente obligación hace referencia—entre el 1 de enero de 1906 y el 13 de junio de 1906, mientras estaba en el desempeño de tal empleo, recibió en su cargo oficial varias sumas de dinero ascendentes a $3,984.71, e infringiendo los deberes de su puesto de confianza, se apropió y convirtió en propiedad particular la dicha suma de $3,984.71 moneda de los Estados Unidos. La súplica de la demanda es al efecto de que se dicte sentencia contra Enrique Miró y los fiadores Pereyó y Borges. Se dictó sentencia en rebeldía contra el deudor principal, Enrique Miró. Los demandados contestaron separadamente admitiendo el otorgamiento de la fianza y el desfalco, pero negando toda responsabilidad por razón de los cambios que se verificaron en la ley, que trajeron consigo un cambio en los deberes del colector al promulgarse el Código Político o aquellas partes del mismo que vulgarmente se conocen con el nombre de la Ley Hollander.

La Corte de Distrito de Humacao resolvió a favor de los demandados por el fundamento substancial de que el Código Político introdujo tal cambio en el cargo y en los deberes de un colector de rentas internas, que los fiadores obligados por la fianza prestada por dicho colector, no podían estimarse responsables por una apropiación de dinero que hubiera tenido lugar después que tales leyes empezaron a regir. La corte resolvió además, que como al Tesorero de Puerto Rico se le autorizaba y ordenaba que creara distritos de recaudación que no excedieran de nueve, y nombrara colectores y les exigiera la prestación de fianza, surge la presunción de que el Tesorero había cumplido los deberes así impuestos, y que el colector necesariamente estaba actuando de acuerdo con un nuevo empleo, por lo que había que deducir, que a los fiadores no podía exigírseles responsabilidad por virtud de su obligación. Los demandados alegaron también el hecho de que confiando en el cambio introducido por la Ley Hollander, se creyeron relevados de toda responsabilidad y habían dispuesto de

aquellos bienes con respecto a los cuales habían jurado que poseían en la época en que se otorgó la fianza en cuestión.

El Pueblo de Puerto Rico, por conducto de sus abogados, insiste en que aun cuando una fianza debe ser interpretada muy estrictamente, sin embargo, cuando un fiador firma una fianza oficial debe tener presente que los deberes del fiador están sujetos a cambios por la Legislatura y que los cambios que haga la ley y que no afecten esencialmente los deberes del funcionario en cuyo favor se obliga el fiador, no pueden afectar tampoco ni destruir su obligación.

*People* v. *Vilas*, 36 N. Y., 459.

*Denio* v. *State*, 60 Wis., 949.

*Spokane Co.* v. *Allen*, 37 Pac., 428.

La cuestión se hará más clara si consideramos la historia de la Ley Hollander y las circunstancias que concurrieron en la época en que se promulgó. El artículo 3 de la Ley Foraker, dispuso lo siguiente:

"Que a partir de la fecha de la adopción de esta ley, toda mercancía que entre en los Estados Unidos, procedente de Puerto Rico, y entre en Puerto Rico, procedente de los Estados Unidos, será admitida en los respectivos puestos de entrada, al. pagarse un quince por ciento de los derechos arancelarios que devengan sus similares procedentes de países extrajeros; y además de este derecho, los artículos de manufactura puertorriqueña que entren en los Estados Unidos pagarán al retirarse para su consumo o venta, un impuesto igual a la contribución interna impuesta en los Estados Unidos sobre artículos similares de manufactura doméstica; dicho impuesto se hará efectivo mediante sellos de contribuciones internas que adquirirá y proveerá el Comisionado de Rentas Internas en el puerto de entrada de dicha mercancía en los Estados Unidos o del punto más conveniente, los cuales sellos se fijarán con arreglo a las prescripciones que dictare el Comisionado de Hacienda; y toda mercancía de manufactura de los Estados Unidos, que entre en Puerto Rico, además de los derechos prescritos arriba, pagará un impuesto igual en tipo y montante a la contribución interna impuesta en Puerto Rico, sobre iguales artículos de manufactura puertorriqueña. *Disponiéndose,* que a partir de la fecha en que esta ley entre en vigor, todas las mercancías y efectos, excepto el café, que no devengan derechos bajo las leyes arancelarias

de los Estados Unidos y todas las mercancías y artículos que entren en Puerto Rico libres de derechos en virtud de órdenes hasta aquí promulgadas por el Secretario de la Guerra, serán admitidos en los distintos puertos del mismo, libres de derechos, cuando sean importados de los Estados Unidos, no obstante lo que en contrario dispusieran las leyes vigentes, y tan pronto como la Asamblea Legislativa de Puerto Rico, decrete y ponga en práctica un sistema de tributación local que llene las necesidades del gobierno de Puerto Rico, establecido por esta ley, y por medio de un acuerdo votado al efecto dé aviso de ello al Presidente, éste lo anunciará por medio de una proclama; y de allí en adelante cesarán de cobrarse los derechos de aduanas sobre mercancías y artículos que entren en Puerto Rico procedentes de los Estados Unidos, o que entren en los Estados Unidos, procedentes de Puerto Rico; y a partir de esa fecha todas las dichas mercancías y artículos entrarán libres de derechos en los diferentes puertos de entrada, y en ningún caso podrá cobrarse derecho alguno de aduana, después del primer día de marzo de mil novecientos dos, sobre mercancías y artículos que entren en Puerto Rico procedentes de los Estados Unidos y viceversa.''

Posteriormente, el día 31 de enero de 1901, la Legislatura de Puerto Rico aprobó una ley que se titula ''Una Ley para proveer de rentas al Pueblo de Puerto Rico y para otros fines.'' Esta ley trataba de implantar y en efecto implantó el sistema de contribución local a que la ley orgánica se refiere. La Legislatura de Puerto Rico el día 4 de julio de 1901 pasó una resolución conjunta notificando al Presidente de los Estados Unidos, que la Asamblea Legislativa de Puerto Rico había promulgado y puesto en vigor un sistema de contribución local, para llenar las necesidades del Gobierno de Puerto Rico y pedía al Presidente de los Estados Unidos, que hiciera la proclama a que se refiere la Ley Foraker, el 25 de julio, que era día festivo legal en Puerto Rico, en conmemoración del aniversario de la llegada de la bandera americana a esta Isla. En su virtud, el día 25 de julio de 1901 el Presidente de los Estados Unidos promulgó la proclama de que la Asamblea Legislativa de Puerto Rico había promulgado y puesto en vigor un sistema de contribución local, para atender a las

necesidades del Gobierno de Puerto Rico. El artículo 38 de dicha ley del 31 de enero de 1901, dispone lo siguiente:

"Para la recaudación de las contribuciones impuestas por esta ley, y para cualesquiera otros deberes que puedan ser prescritos, está autorizado el Tesorero de Puerto Rico para crear el número de distritos de recaudación (que no excederá de nueve en total) que sea necesario para dichos fines; y para nombrar en cada distrito de recaudación un colector con un sueldo anual que no excederá de mil ochocientos dollars, el cual prestará fianza al Tesorero a favor de El Pueblo de Puerto Rico, por la cantidad que el Tesorero fije; dicha fianza será aprobada por el Auditor en lo que respecta a su forma y ejecución y por el Tesorero en lo referente a su suficiencia; *Disponiéndose*, que el importe de dicha fianza será suficiente para cubrir la responsabilidad de los colectores, por todas las rentas y dinero recaudado y recibido y por dinero anticipado de créditos para el pago de sueldos y gastos de su oficina respectiva; *Disponiéndose, además,* que a partir del día 1 de abril del año mil novecientos uno en adelante, los sueldos de los empleados y gastos de las cortes insulares fuera de San Juan, a las cuales se les paga ahora por conducto de los colectores de rentas internas respectivos, se les pague por el pagador oficial del Departamento de Justicia, sujeto a la aprobación del Fiscal General. El Tesorero nombrará el número adicional de subcolectores (no excediendo de veinte y siete), que sea necesario para la debida ejecución de las prescripciones de esta ley. Cada subcolector recibirá un sueldo anual que no escederá de mil doscientos dollars y prestará fianza al Tesorero en igual forma que la aquí prescrita para la fianza de colectores."

Este artículo fué sustancialmente vuelto a promulgar e incorporado en el artículo 329 del Código Político.

Las palabras de la ley, al efecto de que se autoriza y ordena al Tesorero a que cree un número de distritos de recaudación que no excedan de nueve según sea necesario y a nombrar para cada uno, un colector con un sueldo anual que no exceda de mil ochocientos dollars, son de carácter imperativo. Implantado el sistema de contribución local y ordenado el Tesorero que creara los distritos de recaudación, la única discreción que tenía se refería al número de tales distritos de recaudación que no podía exceder de nueve, el número precisa-

mente que a la sazón existía.  Aún en el caso de que el Teso-
rero resolviera dejar subsistentes los mismos distritos de re-
caudación, bajo el punto de vista legal, su acción significaría
la creación de aquellos distritos de recaudación que decidiera
dejar subsistentes, y el funcionario que él eligiera para cada
uno de estos distritos de recaudación, era un nuevo funcio-
nario con un nuevo término para el desempeño de su cargo; y
cuando se establece un nuevo término para el desempeño de
un cargo, las autoridades son claras al efecto de que el fiador
no es responsable por un desfalco que ocurra después de la
fecha del nuevo nombramiento.

*County of Wapello* v. *Bingham,* 74 Am. Dec., 370.

*People* v. *Aikanhead,* 5 Cal., 106.

*Hubert* v. *Mendhain,* 64 Cal., 318.

*Brown* v. *Latlimare,* 17 Cal., 93.

Esta fué la conclusión a que llegó el juez de la corte de dis-
trito, y substancialmente estamos de acuerdo con ella.

Se alega por parte del Gobierno que no ha habido prueba
de que se hubiera hecho un nuevo nombramiento.  Si tal nom-
bramiento no fué en efecto hecho y se permitió que el fun-
cionario continuara en el desempeño de su cargo como un
funcionario de facto por virtud de su primitivo nombramien-
to, creemos que el peso de la prueba para probar este hecho
estaba de parte del Gobierno.  La presunción era, según ha
expresado la corte inferior, que el Tesorero había cumplido
con su deber y hecho un nuevo nombramiento.  Si los hechos
eran otros, debieron haberse probado.  Sin embargo, háyanse
o nó probado, creemos que se estableció un nuevo término
para el desempeño del cargo con el nombramiento de un
nuevo funcionario que tenía deberes y responsabilidades dis-
tintas y tenía que prestar una fianza algo distinta, según se
dispone por el artículo de la Ley Hollander a que nos hemos
referido.

Además, creemos que los deberes y responsabilidades de
un colector de rentas internas fueron esencialmente alterados
por la ley de 31 de enero de 1901 y la subsiguiente proclama

del Presidente, de acuerdo con la Ley Foraker.  No hemos podido llegar a convencernos completamente de que un colector, Enrique Miró por ejemplo, antes de la promulgación de la ley de 31 de enero de 1901 tenía las mismas facultades con respecto al embargo y venta de bienes inmuebles que tuvieron los colectores después de la promulgación de aquella ley.  Otros cambios de poca importancia tuvieron lugar además, por virtud de dicha ley.  Hubo cambios en el arancel, y el artículo 362 declaró nuevas materias sujetas al pago de contribución.  El artículo 346 del Código Político dispone que:

"Si algún colector, subcolector o agente comprase, ya directa o indirectamente, alguna parte de cualesquiera bienes muebles o inmuebles vendidos para el pago de contribuciones no satisfechas, tanto él, como sus fiadores, serán responsables con su fianza oficial de todos los daños sufridos por el dueño de dicha propiedad, y todas las dichas ventas serán nulas.  En adición a ello, el empleado autor de dicha ofensa será considerado culpable de un delito menos grave, y una vez convicto del mismo será multado con una suma que no excederá de mil dollars."

Además de estos cambios de pequeña importancia, la proclama del Presidente hizo que pasaran por las manos de los colectores de rentas internas, sumas de dinero que hasta entonces venían a poder de los colectores de rentas internas de los Estados Unidos.  Todos los vinos, tabaco, naipes y muchos otros artículos que procedentes de los Estados Unidos venían a Puerto Rico con anterioridad al 25 de enero de 1901, tenían que pagar un impuesto al Gobierno de los Estados Unidos, que iba a manos de los colectores de la nación.  Desde la fecha de la proclama, estas sumas de dinero las cobraban los agentes de rentas internas de Puerto Rico, y sus responsabilidades cambiaron materialmente.  Habiéndose alterado esencialmente los deberes del deudor principal, de acuerdo con la doctrina sentada en el caso de *People* v. *Vilas,* 36 N. Y., 459 *supra,* los fiadores quedaron relevados.  No encontramos

que la Corte de Distrito de Humacao haya cometido error alguno al dictar la sentencia apelada y ésta debe confirmarse.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández, y Asociado Sr. Aldrey.

Jueces disidentes: Sres. MacLeary y del Toro.